UNITED STATES of America

v.

Tyrone MITCHELL, Earl Casey.

Cr. No. 87–0454.

United States District Court,
District of Columbia.

Dec. 23, 1987.

Blanche Bruce, Asst. U.S. Atty., Washington, D.C., for U.S.

Michael Olshonsky, Washington, D.C., for defendant Mitchell.

Peter G. Kuh, Chevy Chase, Md., for defendant Casey.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Defendants were arrested and subsequently indicted for drug distribution and related offenses[1] as a result of the Metropolitan Police Department's drug interdiction program at Union Station in Washington, D.C. Each defendant has moved to suppress physical evidence uncovered by searches at the scene of arrest, namely: cocaine base, plastic vials and zip-lock plastic bags, a sawed-off shotgun, a loaded .38 caliber pistol, and ammunition for both firearms. Both defendants testified at the hearing on the motions, as did the two plainclothes police officers who made the arrests.

The police officers testified that they observed defendants, two young black males, coming into Union Station from a train that had arrived from New York; that each man was carrying one of two pieces of matched luggage, in addition to other luggage; that the men went to the public telephone and made a brief call; and that they then exited at a rapid pace heading toward the front of the station where private cars customarily meet arriving passengers. The two men were obviously traveling together. Casey was slightly ahead of Mitchell as they walked toward the entrance of the station. The detectives, without force, escorted each man separately out of the stream of arriving passengers and began questioning them individually. The officers had no basis for a reasonable suspicion that either of the defendants was committing or about to commit an offense. They acted on an experienced hunch but

---

1. The defendants were indicted on the following counts: 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(iii) (Possession with Intent to Distribute Over 50 grams of Cocaine Base); 26 U.S.C. § 5861 (National Firearms Violation); 18 U.S.C. § 924(c) (Carrying a Firearm During the Commission of a Drug Trafficking Crime); 22 D.C. Code § 3204 (Carrying a Pistol Without a License); and 18 U.S.C. § 2 (Aiding and Abetting).

could not articulate any reasonable basis to detain either of the men.

One police officer, after identifying himself by displaying his badge and stating that he was with a drug interdiction unit, questioned Mitchell. The questioning was personal and focused toward uncovering drug-related activity. Mitchell was first asked whether he had arrived on the New York train and, when he answered affirmatively, the officer then asked to see Mitchell's ticket. After presenting the officer with his ticket, Mitchell responded to a further request for identification by producing his New York driver's license. During this time Mitchell also correctly indicated to the officer that his father was a retired police officer. Mitchell characterized this interchange with the officer as "polite."

Mitchell was carrying a tote bag in addition to a piece of luggage and set both bags down when the questioning began. After examining Mitchell's identification, the officer went to his knees and was about to unzip the tote bag when he asked Mitchell if he had any objection to his looking through the bag. Mitchell replied, "I don't see why not." The search uncovered a brown paper bag containing a large quantity of plastic vials, vial caps, and zip-lock plastic bags—paraphernalia commonly used to package and distribute cocaine base or "crack". The officer then made the arrest. A subsequent search of Mitchell's other luggage revealed a sawed-off shotgun. Mitchell testified under oath that he gave his consent to the search and that he did not know that the incriminating items were in the luggage he was carrying.

When the officer made the arrest, he signaled the fact to his fellow officers who were questioning Casey near a marked police car and Casey was forthwith arrested. As the pat-down of Casey commenced, he told the arresting officer he was carrying a firearm on his right hip and a loaded .38 caliber pistol was then recovered.

Against these facts the question is presented whether or not Mitchell as a reasonable person would have believed he was free to refuse to answer the officer's questions and walk away when questioning began or whether or not, in a constitutional sense, he was detained in violation of his fourth amendment rights. *See INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Even if it is assumed —as some decisions of the Supreme Court suggest—that the reasonable, average citizen knows he has a fourth amendment right to refuse to answer an officer's questions and can walk away with impunity, it is impossible for this Court to ignore the realities of the situation. This legalistic premise does not accommodate the realities of this situation.

■ Whatever the premise, the Court is obliged to find in the circumstances of this case that Mitchell was illegally seized. A young black man, he had arrived from out-of-town only to be immediately accosted by a white policeman with a show of authority; while at the same time he was observing his traveling companion being escorted near to a marked police car by two other police officers for questioning. In the ordinary, everyday comings and goings of ordinary citizens, there are few who would believe that under these conditions they could ignore an officer's inquiries and stroll away with impunity; certainly, the consequences of attempting to walk away under those circumstances are far from clear.

Mitchell was not told he didn't have to answer questions. He was not told he could walk away. He was not told he didn't have to give his consent to the search. Given the inability of the police to articulate any reasonable basis to suspect a law violation and the circumstances of the stop—which was not a general, neutral interchange between citizen and police but an inquiry focused on apprehending a drug courier, the Court holds that Mitchell was detained in violation of the fourth amendment. Accordingly, his motion to suppress must be granted.

■ On the other hand, Casey's motion to suppress must be denied. There was ample probable cause for his arrest for aiding and abetting, as evidence of intent to distribute cocaine was found in Mitchell's tote bag. Casey has no standing to

complain of the search of Mitchell. He must stand trial and evidence taken from him and any other evidence recovered by the police may be offered in evidence against him.

The drug interdiction program being carried forward at Union Station by the Metropolitan Police Department is vital to the public interest. There is ample evidence that couriers unable to travel by airplane because they are armed are using AMTRAK to bring a highly dangerous form of cocaine—"crack"—into this city on a daily basis. These couriers are in reality merchants of death. It is vital to the well-being of the city that trafficking of this type be stopped. In situations such as this, it is tempting to bend constitutional standards. But the Justices of the Supreme Court have not been willing to bend the fourth amendment and, indeed, have rejected the suggestion of Justice Powell that, where a strong public interest is involved, a balancing of interests should be allowed. *See, e.g., INS v. Delgado,* 466 U.S. 210, 222–24, 104 S.Ct. 1758, 1765–67, 80 L.Ed.2d 247 (1984) (Powell, J. concurring in result); *Florida v. Royer,* 460 U.S. 491, 508–09, 103 S.Ct. 1319, 1329–30, 75 L.Ed.2d 229 (1982) (plurality opinion) (Powell, J., concurring).

Many of the stops at Union Station have been made with valid, articulable reasons to suspect wrongdoing. However, some are based on no more suspicion than that the focus of the officers' attention is young, male, black and traveling from New York. Until the officers in this program advise those who are stopped without any reasonable, articulable suspicion of their right not to answer police inquiries, it will remain the unfortunate fact that some who should be prosecuted must be released because their fourth amendment rights have been violated.

The motion of defendant Mitchell to suppress all tangible items seized from him is granted as to him, and the motion of defendant Casey to suppress is denied.

A scheduling conference, to be attended by both defendants, their counsel and the Assistant U.S. Attorney, is set for January 4, 1988, at 9:30 a.m. to set a trial date.

SO ORDERED.