**UNITED STATES of America, Plaintiff,**

v.

**Jose Rafael REYES, Defendant.**

**Crim. No. 88–0055.**

United States District Court, District of Columbia.

April 26, 1988.

**514**

Judith E. Retchin, Asst. U.S. Atty., for plaintiff.

Archie M. Nichols, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

Defendant was arrested and subsequently indicted on a charge of drug distribution. He has moved to suppress evidence seized at the scene of the arrest, as well as statements he made subsequently while in custody of the police.

A suppression hearing was held, at which the arresting officers, Detective Donald Zattau and his partner, Sergeant John Brennan testified. They stated they were on stakeout and in plain clothes at Union Station, under the Metropolitan Police Department's drug interdiction program, when they saw defendant Reyes disembark from a New York to Washington train. They watched him go to a pay phone and make two calls, one in which he spoke in a loud voice, easily overheard, the second in a much lower tone of voice they could not overhear. Reyes spoke in Spanish, which neither officer understood.

As Reyes left the phone, Sergeant Brennan approached Reyes and identified himself, showing him his identification folder (not his badge), which contained a paper for identification purposes that included a picture of the officer. Brennan asked if he could speak with Reyes, who indicated agreement. Given that they were standing in a heavy, rush hour stream of traffic, Brennan asked if they could step aside a few feet, and Reyes readily acceded to Brennan's request.

Brennan then asked if Reyes understood English. Reyes said he did, if Brennan spoke slowly.[1] Brennan asked if he had just gotten off the train from New York, and Reyes said he had. Brennan asked to see his ticket, which Reyes handed to him. After examination, Brennan handed it back and asked if Reyes had some identification. Reyes produced his driver's license, which Brennan examined and returned. While

---

1. Although Reyes requested and is now using an interpreter in court, there was substantial and unrebutted testimony that he fully understands English, as well as Spanish.

reaching for his ticket and driver's license, Reyes held his bag between his legs rather than set it down on the floor. Brennan then said he was with the city's drug interdiction program, and that there was a problem with drugs coming into the city; did Reyes have any problem with having his bag searched? Reyes said no, which both officers understood as indicating assent. Nonetheless, perhaps because Reyes was still clutching his bag, Brennan asked again, this time more clearly, whether he could search Reyes bag. Reyes answered "yes" and simultaneously handed it over.

During this exchange, Detective Zattau had been standing a few feet behind and to the left of Reyes. Brennan never indicated Zattau's presence to Reyes; Zattau testified further that Reyes had not made eye contact with him up to that point and seemed to be unaware of his presence in the crowded station. Only when Brennan had already received permission and had begun to search the bag did Zattau attract Reyes' eye, as he moved closer to Reyes in a precautionary move, while Brennan's attention was directed to the bag now laying at Reyes' feet.

Neither officer had displayed weapons or badges up to this point, nor had either touched Reyes. Brennan testified that his conversational tone was subdued and polite.

Brennan discovered a pound of cocaine in Reyes' bag, as verified by a field test. Reyes was then placed under arrest, and the court must now decide whether the cocaine was lawfully confiscated.

*Discussion: The Search of Reyes' Bag*

█ It is clear that there was insufficient cause to arrest or detain Reyes prior to discovery of the cocaine in his possession. Therefore, its admissability in evidence hinges on whether its discovery resulted from a "seizure" of Reyes, for if so, it was in violation of the Fourth Amendment.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed. 2d 497 (1980) (footnote omitted).

The evidence presented by the Government, and unrebutted by Reyes, conforms closely to the sorts of encounters found by the Supreme Court to fall short of a seizure. The encounter took place in a crowded public area. The officers were in plain clothes and did not display weapons. Sergeant Brennan did not summon Reyes to his presence, but rather approached him. He requested, but did not demand, to see his ticket and identification, and to search his bag. *Mendenhall* at 555, 100 S.Ct. at 1877. His tone was not intimidating, but conversational. Further, he immediately returned the ticket and license, and did not ask Reyes to accompany him to another destination prior to discovery of the cocaine. *See Florida v. Royer* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). The request to search his bag was made twice, the officers understanding Reyes to assent both times, and the search was not begun until Reyes actually handed it over to Brennan. *United States v. Brady*, 842 F.2d 1313, 1315 (D.C.Cir.1988) (defendant himself took crucial initiatives, first in suggesting that the ticket requested by Agents Ford and Rosel would have to be retrieved from his room on the train; and second, in actually beginning the room search himself by lifting down his coat, revealing the gym bag containing cocaine).

Defense counsel observes that it is questionable whether Reyes could really assume he was free to just walk away from the encounter, and cites *United States v. Mitchell, et al.*, 699 F.Supp. 1 (D.D.C.1987) for the proposition that the search was therefore illegal, despite Reyes' consent. But in *Mitchell*, the officer displayed his badge, *id.* at 2, and "accosted" the defendant, while two other officers escorted his companion to a marked police car as Mitchell looked on. *Id.* at 2. Under the circumstances, Judge Gesell held that the officer should have warned Mitchell of his right not to answer inquiries. *Id.* at 3.

*Mitchell* is readily distinguished: it involved a detention by police, *id.* at 2, and therefore falls outside the scope of *Mendenhall.* Where, as here, an encounter between police and a citizen does not constitute a seizure, the officer's failure to advise the citizen of his right to walk away or refuse to respond does not reduce its consensual nature. *United States v. Brady,* Crim. No. 87–0107 at 4 (D.D.C.June 4, 1987, J. Gesell), *aff'd.* 842 F.2d 1313, 1315 n. 5 (D.C.Cir.1988).

Nonetheless, the Court agrees that application of the *Mendenhall* "reasonable person" test to these facts does seem to require more than merely going down a checklist of indicia presented by the Government. It should be obvious that Reyes would not want to hand contraband over to police (this may well have been manifested by the obvious protectiveness with which he regarded it), and that he did so only in response to Brennan's request. As one court has noted regarding any encounter initiated by a law enforcement official: "[A]ny agent worthy of the calling expects cooperation and knows how to get it. Implicit in the introduction of the agent and the initial questioning is a show of authority to which the average person encountered will feel obliged to stop and respond. Few will feel that they can walk away or refuse to answer." *Illinois Migrant Council v. Pilliod,* 398 F.Supp. 882, 899 (N.D.III.1975), *cited in* 3 W. LaFave, *Search and Seizure* § 9.2(h) at 410 (2d ed. 1987).

It seems unwise to ignore the reality that such pressure is inherent in any encounter initiated by police. But the Court's function is not to eradicate such pressure; rather, it should only assure that the officer did not add to it in a manner thought to be offensive by a reasonable person, recognizing that a reasonable person is often willing to co-operate with law enforcement officials in apprehending criminals or preventing crime. *Gomez v. Turner,* 672 F.2d 134, 141–142 (D.C.Cir.1982); *see La-Fave* at 410–415.

The Court is satisfied that Sergeant Brennan and Detective Zattau did not unreasonably add to the pressure on Reyes. Sergeant Brennan neither accosted Reyes nor summoned him; rather, he approached him. His demeanor was to inquire and request, not demand; his tone was conversational and polite, not authoritarian or harassing. His method of identifying himself by showing an identification folder with his photograph, rather than a badge, seemed particularly calculated to assure a reasonable person of his *bona fides* without pressing upon him the weight of his authority. And, despite the initial assent, he waited until Reyes affirmatively handed over his bag before undertaking to search it. Meanwhile, Detective Zattau remained discretely in the background, undetected by Reyes, until after consent to search had been clearly obtained, and then made his presence felt only to an extent sufficient to protect his now vulnerable partner.

Therefore, the court finds the cocaine obtained from the search of Reyes' bag to be admissible in evidence.

*Admissions by Reyes*

According to evidence presented at the hearing, Reyes was not fully informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), until after he was taken to the Indiana Avenue Station, where he was presented with a card from which to read them.[2] The Court notes that this proce-

---

**2.** The card said, in Spanish:

"METROPOLITAN POLICE DEPARTMENT
WARNING AS TO YOUR RIGHTS

You are under arrest. Before we ask you any questions, you must understand what your rights are.

You have the right to remain silent. You are not required to say anything to us at any time or to answer any questions. Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

If you cannot afford a lawyer and want one, a lawyer will be provided for you.

If you want to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

On the other side, in Spanish, the card said:

dure is adequate to waive Reyes' Fifth Amendment right not to incriminate himself. *United States v. Bailey*, 468 F.2d 652, 659–660 (5th Cir.1972). However, any statements made by Reyes prior to the time that he read and signed the card will not be admissible, unless they fall outside the protection of *Miranda*.

■ Reyes made some statements in particular, while in custody but prior to receiving his *Miranda* warnings, which the government contends are not protected by *Miranda* and therefore should not be suppressed: shortly after he was arrested, Reyes asked the officers repeatedly if they could let him go. Without commenting on their relevance at this stage, the Court finds that these were volunteered statements by Reyes, and in particular they were not in response to any utterance by either officer. Therefore, they are admissible despite the absence of a *Miranda* warning. "[V]olunteered statements of any kind are not barred by the Fifth Amendment...." *United States v. Foskey*, 636 F.2d 517, 521 (D.C.Cir.1980) *quoting Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630. There was no evidence at the hearing that the statements by Reyes were a response to interrogation by the officers, or to words or actions on their part which they should have known were reasonably likely to elicit the statements. Therefore, the Court finds they were voluntary, and not protected by *Miranda*. *Rhode Island v. Innis*, 446 U.S. 291, 300–301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1987).

■ Finally, there is one other statement by Reyes made under circumstances that were unclear at the hearing. It occurred while Detective Zattau was weighing the cocaine found in the search, when he was asked by Sergeant Brennan how much it weighed. Reyes, present in the same room, said it weighed one pound (which turned out to be accurate). If the response by Reyes was made prior to his execution of the *Miranda* warnings card, it will be suppressed despite the govenment's assertion that it was voluntary. Although Sergeant Brennan testified that his question was directed to Detective Zattau, his subjective intent is not enough. The government produced no additional evidence that an objective observer, with the same knowledge of Reyes as Sergeant Brennan had at that point, would not, on the sole basis of hearing Brennan's question, infer that it was designed to elicit the response made by Reyes. 1 C. Wright, *Federal Practice and Procedure* § 76.1 (2d ed. 1982).

It is therefore

ORDERED, that the cocaine found in the search of Reyes' bag, along with his request to be let go once he was taken into custody, will not be suppressed. However, his statement that the cocaine weighed one pound will be suppressed, unless the government can show it was made after he signed the *Miranda* warning card.

SO ORDERED.

---

"WAIVER

1. Have you read or had read to you the warning as to your rights? _____
2. Do you understand these rights? _____
3. Do you wish to answer any questions? _____

---

4. Are you willing to answer questions without having an attorney present? _____
5. Signature of defendant on line below.

6. Time _____ Date _____
7. Signature of Officer _____
8. Signature of Witness _____"

Reyes responded "yes" in English, to all four questions. The card was signed by Reyes, Detective Zattau, and a witness. Government Exhibit No. 1. The English translation of Government Exhibit No. 1 was introduced as Government Exhibit No. 3.