D'Allesandro v. Johnson & Wales U.    CV-94-543-SD  03/16/95
                UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEW HAMPSHIRE


Jennifer D'Allesandro;
Claire Hall


        v.                                    Civil No. 94-543-SD


Johnson & Wales University



                            O R D E R


     In this civil action, plaintiff Jennifer D'Allesandro
alleges claims of (1) breach of contract, (2) invasion of privacy
in violation of both the Constitution of the United States and
that of the State of Rhode Island, (3) deprivation of procedural
and substantive due process rights in violation of 42 U.S.C. §
1983, as well as (4) conspiracy to deprive D'Allesandro of the
equal protection of the laws in violation of 42 U.S.C. § 1985
against defendant Johnson & Wales University.  Plaintiff Claire
Hall, D'Allesandro's mother, seeks reimbursement for twenty-two
weeks of child support forfeited as a consequence of
D'Allesandro's suspension and expulsion from the University.

     Presently before the court is defendant's motion to change
venue pursuant to 28 U.S.C. § 1404(a), to which plaintiffs
object.

## Background

Between July 1992 and March 1993, plaintiff Jennifer D'Allesandro, a New Hampshire resident, was enrolled as a Johnson & Wales University student and participated in the University's Warwick, Rhode Island, on-campus residency program. On or about March 21, 1993, D'Allesandro alleges that her dormitory room was the subject of an illegal search conducted by various members of the University's staff in association with the Rhode Island Police Department.[1] Three days later, following an appeals conference conducted at the University's Providence location, D'Allesandro was expelled from the University "for possessing, using and selling illegal drugs, to wit, marijuana . . . ." Writ of Summons Count I.[2]

---

[1]According to the University, plaintiff's reference to the "Rhode Island Police Department" is assumed to specifically pertain to "Richard Santos and Michael Noviello, both members of the Warwick, Rhode Island Police Department who, on information and belief, are both residents of Rhode Island." Affidavit of Barbara L. Bennett ¶ 7 (attached to Defendant's Motion to Transfer).

[2]The evidence allegedly relied on by the University in ordering D'Allesandro's expulsion consisted of "marijuana confiscated during the . . . room search, a statement by an unidentified student, and a surveillance tape made by the [Warwick] Police Department." Writ of Summons Count I.

Discussion

1.  Transfer under 28 U.S.C. § 1404(a)

Defendant seeks to have this action transferred to the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1404(a), which provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  It is without question that this action could have been initiated in the District of Rhode Island.

Section 1404(a) transfers, discretionary in nature, require the court to undertake an "'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  It is thus incumbent on the district court "to weigh in the balance a number of case specific factors" which may counsel either for or against transfer.  Id. Traditionally included in the balance have been such factors as

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  "The

3

flexible and individualized analysis Congress prescribed in §

1404(a) thus encompasses consideration of the parties' private

expression of their venue preferences . . . [and] the convenience

of the witnesses [as well as] those public-interest factors of

systemic integrity and fairness . . . ." Stewart, supra, 487

U.S. at 29-30.[3]

In addition to weighing the relative public and private

interests implicated by the motion to transfer, the court must

likewise account for the substantive burden borne by the movant.

To wit, the movant must demonstrate "that [the public and

private] factors predominate in favor of transfer." Buckley,

supra, 762 F. Supp. at 439 (emphasis added).  That is, "unless

the balance is strongly in favor of the defendant, the

plaintiff's choice of forum should rarely be disturbed."  Gulf

Oil Corp., supra, 330 U.S. at 508 (emphasis added).

Moreover, "'a plaintiff's choice of forum is entitled to

---

[3]Whereas the private interests of the parties include, inter
alia, "the respective residences and abilities [of the parties]
to bear the expense of trial in a particular forum . . . [the]
[p]ublic interest factors include the court's familiarity with
applicable law and the desirability of resolving controversies in
their locale."  Sage Prods., Inc. v. Devon Indus., Inc., 148
F.R.D. 213, 216 (N.D. Ill. 1993) (citations omitted); see also
Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 439 (D.N.H. 1991)
("The convenience of the parties and witnesses and the
availability of documents needed for evidence are factors a
district court must consider in resolving whether to grant a
motion to transfer under section 1404(a).").

greater deference when the plaintiff has chosen the home forum[,]' because 'it is reasonable to assume that this choice is convenient.'" Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 52 (1st Cir. 1990) (quoting Piper Aircraft Co. v. Reyno, 452 U.S. 235, 255-56 (1981)) (brackets in Royal Bed). But cf. McFarland v. Yegen, 699 F. Supp. 10, 15-16 (D.N.H. 1988) (plaintiff's choice of forum accorded less weight where operative facts of case have no material connection with district).

### a. Convenience of the Parties

Johnson & Wales maintains facilities in both Providence and Warwick, Rhode Island. Bennett Affidavit ¶ 6. Plaintiffs are domiciled in Nashua, New Hampshire, and D'Allesandro is currently enrolled as a full-time student at Hesser College, located in Manchester, New Hampshire. Affidavit of Claire Hall ¶ 6 (attached as Exhibit C to Plaintiffs' Objection).

Defendant indicates that all of the files and documents pertinent to this matter in its possession are maintained at the University's business office in Providence. Bennett Affidavit ¶ 8. Defendant further maintains that prosecution of this case in New Hampshire "would be very burdensome to the day-to-day affairs of Johnson & Wales," id. ¶ 7, in that the University will be

5

required to produce numerous employees for depositions or trial in New Hampshire, <u>id.</u> ¶ 11.

Plaintiffs contend, however, that transfer of the case to Rhode Island would effect upon them both an economic and a logistical burden. <u>See</u> Affidavit of Jennifer D'Allesandro ¶ 7 (attached as Exhibit B to Plaintiffs' Objection); Claire Hall Affidavit ¶¶ 8, 10; Affidavit of Richard Hall ¶¶ 8, 10 (attached as Exhibit D to Plaintiffs' Objection). Previously, plaintiffs attempted to retain Rhode Island counsel, but were unable due to economic considerations.[4] Claire Hall Affidavit ¶ 8; Richard Hall Affidavit ¶ 8. Further attempts at retaining Rhode Island counsel were compromised due to their inability to either remain in Providence or travel between Nashua and Providence in an effort to achieve same. Claire Hall Affidavit ¶ 8; Richard Hall Affidavit ¶ 8. Plaintiffs' economic position is further complicated by the fact that Richard Hall, D'Allesandro's stepfather, remains currently unemployed due to serious physical injury. Richard Hall Affidavit ¶ 9. Transfer of their cause to the District of Rhode Island, plaintiffs contend, would "cause a

---

[4]Despite her expulsion from the University, D'Allesandro is still required to make payments on the student loan she took out in order to attend the University. D'Allesandro Affidavit ¶ 6. By the same token, plaintiff Hall remains obligated on the $4,000 Parents Plus Loan she took out to assist D'Allesandro in paying the $7,300 tuition bill. Claire Hall Affidavit ¶ 4.

substantial financial hardship" such that they "would not be able to pursue this matter any further."  D'Allesandro Affidavit ¶ 7; Claire Hall Affidavit ¶ 10.

"In weighing the convenience of the parties, the court may take into account the financial strength of each."  Galonis v. National Broadcasting Co., 498 F. Supp. 789, 793 (D.N.H. 1980) (citing 15 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3849 (1986)).  "If, arguendo, the plaintiffs' allegations concerning the defendant[']s [actions] and the resultant damages are taken to be true, the financial ability of the defendant[] to litigate this action in New Hampshire is a significant factor to be considered by the court in its venue determination under § 1404(a)."  Id. (emphasis added).

The court finds that when the above-noted factors are considered in conjunction with the apparent disparity in fiscal strength existing among the parties, the "convenience of the parties" element does not weigh in favor of transfer.

b.  Convenience of the Witnesses

In deciding whether to transfer an action pursuant to section 1404(a), "[t]he most important factor . . . is the convenience of witnesses."  Buckley, supra, 762 F. Supp. at 440 (citing WRIGHT, supra, at § 3851 n.1).

7

With the exception of the plaintiffs and Richard Hall, all of the potential witnesses in this case either reside or work in Rhode Island.  Of the nine University Security and Student Affairs personnel identified in plaintiffs' complaint,[5] five are still employed by the University.[6]

Insofar as these five witnesses are presently employed by the defendant, their presence can be compelled by same, and thus their "live" testimony will not be sacrificed should venue remain in New Hampshire.  See Galonis, supra, 498 F. Supp. at 793 ("A defendant's motion to transfer under § 1404(a) may be denied when the witnesses are employees of the defendant and their presence can be obtained by that party.") (citing WRIGHT, supra, § 3851).

Whether members of the Warwick Police Department or the three former University employees can be compelled to appear in New Hampshire presents a different issue altogether.  The

_____

[5]Such security personnel included Campus Safety and Security Chief Peter Postoian, Corporal Arthur O'Connell, Officer John Brewer, and Officer Carl Cunningham.  Writ of Summons Count I. University personnel identified included the Dean of Students, Michael Pasquarella, as well as University staff members Ralph Brooks, Carol Lombardi, Peter Petroscka, and Karen Fontes.  Id.

[6]Campus Safety and Security Chief Postoian left the University's employ on April 9, 1993, and died on December 29, 1993.  In addition, three other individuals have left the University's employ: Brooks, September 7, 1993; Officer Cunningham, May 7, 1994; and Corporal O'Connell, February 10, 1995.  Bennett Affidavit ¶ 7.

subpoena power of this court is limited to those areas within the District of New Hampshire and within a 100-mile radius of Concord, New Hampshire, where the district court is located.  See Rule 45(b)(2), Fed. R. Civ. P.  Constrained by this 100-mile limitation, the court finds that, although Providence is within this court's Rule 45(b)(2) subpoena power, Warwick is not.[7]

Despite plaintiffs' willingness to travel to Rhode Island to obtain videotape deposition testimony of those witnesses who are beyond the court's subpoena power, the University is less inclined to forsake the presentation of "live" witnesses before the jury.  The plaintiffs' apparent concession notwithstanding,

---

[7]Current cases discussing the 100-mile limitation imposed by Rule 45 indicate that said distance is measured along a straight line on a map rather than along the ordinary, usual, and shortest route of public travel.  See, e.g., Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F. Supp. 667, 669 (D. Kan. 1993) ("the proper interpretation of Rule 45(b)(2) is to measure the 100 mile rule by a straight line on a map").  Cf. Langsam-Borenstein Partnership v. NOC Enters., Inc., 137 F.R.D. 217, 218 n.3 (E.D. Pa. 1990) (interpreting 100-mile provision of Rule 4, Fed. R. Civ. P., as "a 100-mile radius of the courthouse, measured on a straight line, i.e., by air miles, or 'as the crow flies'"); Hill v. Equitable Bank, Nat'l Ass'n, 115 F.R.D. 184, 186 (D. Del. 1987) ("In measuring the distance between the place of trial and the place of service, the more modern interpretation has been to measure mileage by a straight line on a map."); SCM Corp. v. Xerox Corp., 76 F.R.D. 214, 215 (D. Conn. 1977) (harmonizing the 100-mile provision of Rules 4, 32, and 45, Fed. R. Civ. P., "to mean a straight line measurement").  By the court's measurement, Providence lies some 96 miles from the downtown Concord location of the courthouse, while Warwick exceeds a distance of some 105 miles.  See RAND MCNALLY ROAD ATLAS, UNITED STATES-CANADA-MEXICO 45, 61 (1993).

"to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." Gulf Oil Corp., supra, 330 U.S. at 511.

Inasmuch as the proper resolution of plaintiffs' conspiracy and invasion of privacy claims may turn on the testimony of those witnesses who remain beyond the court's subpoena power, trial in this forum proves to present an impediment to the just adjudication of the matter which is unsatisfactory to the court. Accordingly, the court finds that the "convenience of the witnesses" element weighs strongly in favor of transfer.

### c. Interest of Justice

The interest of justice "is a factor to be considered on its own and an important one . . . [which] may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction." WRIGHT, supra, § 3854, at 439-40. As the court's inquiry into the two prior factors leaves the transfer scales evenly balanced, consideration of whether justice will be advanced by transfer of this action to the District of Rhode Island will indeed prove to be decisive.

Aside from being the location of plaintiffs' domicile, New

10

Hampshire lacks any material connection with the underlying litigation.[8]  Rhode Island, rather, constitutes the domicile of the defendant and the situs of the majority of the witnesses and relevant documentary evidence,[9] as well as the locale wherein the allegedly illegal search and subsequent appeal conference took place.  Moreover, D'Allesandro's tuition agreement and on-campus housing contract were executed and accepted in Rhode Island.  Consequently, transfer to the District of Rhode Island would best serve the dual interests of convenience and comity and would obviate any potential problems relating to the attendance of key witnesses at trial.

Recognizing that there is "a local interest in having localized controversies decided at home,"[10] Gulf Oil Corp.,

---

[8]Plaintiffs have in fact conceded that the operative facts material to this controversy occurred in Rhode Island.  Moreover, to the extent plaintiffs' complaint alleges violations of state law, such law is of the state of Rhode Island.

[9]As discussed in part 2.b, supra, the court's subpoena power does not reach as far as Warwick, and thus the testimony of the Warwick Police Department officers present during the alleged search and whatever documentary evidence the Department may hold would not be subject to compulsory production in this court.

[10]Connected to this "local interest" is the burden of jury duty, which "ought not to be imposed upon the people of a community which has no relation to the litigation."  Gulf Oil Corp., supra, 330 U.S. at 508-09.  Rather, "it would be more appropriate to have the case tried before a jury selected from residents of the state having the greatest interest in the case, namely, the state where the [search] occurred."  Cook, supra, 816

11

supra, 330 U.S. at 509, and the appropriateness of having the trial of a case "in a forum that is at home with the state law that must govern the case," id., the court, under ordinary circumstances, would be inclined to grant defendant's motion to transfer without reservation.  However, the court's consideration of what is in the interest of justice is not circumscribed to merely public factors of judicial administration, but to those of private origins as well.

"In exercising its discretionary transfer power under 28 U.S.C. § 1404(a) the district court may condition transfer upon appropriate safeguards in the interests of justice." Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1048 (3d Cir. 1973).  Without "appropriate safeguards," unconditional transfer to the District of Rhode Island would place a definite and significant burden upon plaintiffs, their limited resources, and their capability to adequately prosecute their claims. Plaintiffs will be required to incur, at a minimum, travel and lodging costs to which they would not otherwise be subjected if their case were tried in this court.

In view of the financial inequity of the parties, the court hereby finds and rules that defendant must, if it desires this case to be transferred to the District of Rhode Island, agree to

_____

F. Supp. at 669.

12

reimburse plaintiffs for those additional expenses, regardless of the outcome of this suit.  See Bacon v. John Hancock Mut. Life Ins. Co., 317 F. Supp. 302, 304 (D. Md. 1970); accord General State Auth. v. Aetna Casualty & Sur. Co., 314 F. Supp. 422, 424-25 (S.D.N.Y. 1970) (conditional section 1404(a) transfer pending defendant's agreement to pay increase in reasonable attorney's fees of plaintiff incurred solely by reason of transfer); Wright v. American Flyers Airline Corp., 263 F. Supp. 865, 870 (D.S.C. 1967) (conditional transfer subject to defendant's agreement to pay reasonable transportation and maintenance costs of plaintiffs, their witnesses, and their counsel); John W. Johnson, Inc. v. Atlantic States Constr. Co., 276 F. Supp. 379, 382-83 (D. Md. 1967) (same).

Accordingly, upon consideration of all the relevant factors, the court hereby further finds and rules that conditional transfer to the District of Rhode Island is warranted, subject to defendant's acceptance of the following terms and conditions: Defendant agrees to pay the reasonable costs of travel between Concord, New Hampshire, and Providence, Rhode Island, and of lodging in Providence, Rhode Island, of plaintiffs, of plaintiffs' New Hampshire counsel, and of any witnesses who are residents of New Hampshire whose attendance plaintiffs reasonably require at trial.  Defendant shall file with this court within

13

fifteen (15) days of the date of this order an agreement accepting this undertaking.[11] Upon receipt of said agreement, this proceeding shall forthwith be transferred to the United States District Court for the District of Rhode Island.

<u>Conclusion</u>

For the reasons set forth herein, defendant's motion to transfer (document 10) is conditionally granted subject to defendant's filing with this court within fifteen (15) days of the date of this order an agreement to pay the reasonable costs of travel between Concord, New Hampshire, and Providence, Rhode Island, and the lodging costs in Providence of plaintiffs, their counsel, and necessary witnesses occasioned by reason of said transfer to the United States District Court for the District of Rhode Island.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

March 16, 1995
cc:  Stephen E. Borofsky, Esq.
     Daniel P. Schwarz, Esq.

_____

[11]Implicit in the court's ruling is the understanding that should the University find the transfer conditions indicated herein unsatisfactory and thus decline to file said agreement, the court, in the interest of justice, will accordingly deny the motion to transfer and retain jurisdiction over all matters.

14