UNITED STATES of America

v.

**Howard E. BRADY, Appellant.**

No. 87–3059.

United States Court of Appeals, District of Columbia Circuit.

Argued March 3, 1988.

Decided April 1, 1988.

As Amended April 1, 1988.

Edward C. Sussman, Washington, D.C., (appointed by the Court), for appellant.

N. Paul Patterson, Asst. U.S. Atty., of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of Court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Helen M. Bollwerk and

**1314**

Elizabeth Trosman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, ROBINSON and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

We uphold the conviction. The sole error alleged was the district court's order denying appellant's motion to suppress evidence. We decide that the order was proper.

This case arises out of events that took place on board Amtrak Train # 92 at Union Station, Washington, D.C. on March 23, 1987. Appellant Howard E. Brady had purchased a one-way ticket (sleeping compartment), traveling from Hollywood, Florida to Philadelphia, Pennsylvania. The train stopped at Union Station for just over one-half an hour. Several Drug Enforcement Administration (DEA) agents, notably Agent Rosel and Inspector Ford, boarded the train and sought out Brady. A conversation in the lounge car ensued. The agents identified themselves. When Rosel asked Brady if he could look at his ticket, Brady replied, "Yes, but we have to go to my room and get it." The three walked to the room; Brady handed Rosel his ticket, and, after brief words, Rosel asked if Brady would object to a room and luggage search. According to the district court, Brady replied, "Go ahead, it's not my train."[1] Brady himself took down his coat, which revealed a gym bag also in the luggage compartment. Brady exclaimed, "I don't know whose bag that is. I never saw it before."[2] A search uncovered cocaine in the bag.

Brady was indicted and he subsequently moved to suppress the cocaine as evidence

tainted by an unlawful search. The motion was denied after hearing, and Brady was convicted. On July 23, 1987, he was sentenced to five years' incarceration, five years' probation, and a small fine. He filed timely appeal to this court.

ANALYSIS

The district court considered three issues before it denied Brady's motion to suppress. The court's rulings as to the first two are correct; its third determination, unfavorable to the government on the issue of abandonment, is dubious. Affirmation of the district court's first two conclusions provide sufficient basis to uphold the court's order.

A. *No Fourth Amendment Detention*

This court has articulated the test to determine whether an encounter between an officer of the law and a citizen amounts to a detention which requires fourth amendment protections. *See Gomez v. Turner*, 672 F.2d 134 (D.C.Cir.1982). We ask whether a reasonable person would conclude from the circumstances, and the show of authority, that he was not free to leave the officer's presence. *Id.* at 141. Brady faced none of the factors typically found to intimidate persons into thinking that compliance is obligatory: no visible weapons; no physical intimidation; no threats; no unusual setting or time. Appellant's adamant, repeated description of the agents' conduct as "undeniably aggressive" [sic], "intrusive," and "exceedingly aggressive," has no basis. The record proves the contrary. Agents Ford and Rosel were in plain clothes; they were courteous; and at each point in the discussion, movement and search, they requested permission from Brady before acting. Indeed, Brady himself took crucial initiatives, first in suggesting that the ticket would have to

---

1. Agent Rosel expressly denied that the second clause ("it's not my train") was uttered, Transcript (Tr.) at 36; instead, he testified that Brady simply remarked, "Yes, go ahead." Tr. at 10. Exactly to the contrary, Brady himself testified that he only replied, "it's not my train." Tr. at 50.

2. Agent Rosel testified that Brady exclaimed: "That's not my bag. I never saw that bag before. I don't know who put that bag in my compartment." Tr. at 37. Brady himself simply acknowledged that "I told them the bag wasn't mine." Tr. at 52.

be retrieved from his room, and second, in beginning the room search by lifting down his coat. There simply is no evidence that supports appellant's claims of an "aura of confinement" or a "feeling of detention," [3] and certainly none that would support the charge of "a serious [sic] of overt and agressive [sic] actions, in which the police abused their authority and operated in a fashion that served as a detention, compelling the inevitable conclusion that appellant was under police control and subject to their wishes." Brief of Appellant at 19. Overt, agressive actions, abuse of authority, and a detainee subject to police whim describe an altogether different scene from the one in this case.[4]

## B. *Consent/Coercion*

■ The Supreme Court in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), restated that a warrantless search approved by consent is wholly valid. *Id.* at 222, 93 S.Ct. at 2045. When Agent Rosel asked to search Brady's compartment and luggage, Brady consented. "[G]o ahead"—the statement attributed to Brady by Agent Rosel, and credited by the trial judge—was a clear grant of permission to search. The finding that this permission was given, *see United States v. Brady*, No. 87–107, mem. op. at 5 (D.D.C. June 4, 1987), based on demeanor and credibility evidence, cannot be said to be clearly erroneous. *See* Fed.R.Civ.P. 52(a). The fact that Brady also commented "it's not

my train" has little relevance. More trenchant to a totality of circumstances inquiry, *see Schneckloth* at 412 U.S. 248–49, 93 S.Ct. at 2058, of course, would be evidence of aggressive questioning, intimidating actions, or prolonged police presence. *See id.* at 226–27, 93 S.Ct. at 2047 (listing factors). Again, none of these conditions existed. The several witnesses' testimony confirms the calm and professional behavior of the agents involved. Moreover, Brady himself displayed self-assuredness and lucidity that hints of no intimidation, nor of any impairment to his mental abilities from the alcohol he claims to have imbibed.[5]

## C. *Abandonment*

■ We affirm the district court on the basis of its consent holding. Thus, we need not reach that court's ruling on the question of abandonment.[6] We do, however, express serious doubts as to its validity. Warrantless searches of abandoned or disclaimed property do not violate the fourth amendment. *See Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). The district court concluded, however, without analysis or support, that Brady's express disclaimer of ownership of his gym bag did not amount to abandonment, hence could not legally result in surrender of his privacy expectation in the property.[7] A determination of abandonment is a factual finding, which we

3. Needless to say, a reasonable person is not assumed to have a guilty mind, which is especially prone to apprehensions of confinement.

4. Because we find that no detention occurred, we do not reach the question of probable cause for restraining Brady.

5. We find no merit in appellant's suggestions either that the narrowness and confinement of a train compartment are inherently isolationist, hence coercive, or that the failure affirmatively to inform a person of her right to refuse consent is coercive *per se.*

6. Because appellant-Brady has not argued, nor does the record suggest, that the district court's finding that Brady gave his consent "without qualification," *see United States v. Brady*, No. 87–107, mem. op. at 5 (D.D.C. June 4, 1987), was clearly erroneous, we do not conclude that Brady's disclaimer of ownership indicated an intent

to withdraw his consent to search that piece of luggage.

7. The decisional law that appellant-Brady relies on to reiterate the district court's holding is inapposite: The cases merely confirm that abandonment will not be recognized when it is the result of illegal police conduct. *See, e.g., United States v. Morin*, 665 F.2d 765 (5th Cir.1982). Appellant attempts to expand this doctrine to cases where the abandonment is "the product of *intrusive* police conduct." Brief of Appellant at 32 (emphasis added). Not only is the enlargement of doubtful merit, but also, appellant again mistakenly characterizes agents Rosel's and Ford's behavior. There is no evidence to support Brady's position that the agents' encounter was "designed to force the relinquishing of property. . . ." *Id.*

review for clear error. In this case, however, the district court made no findings of fact to support its conclusion that the government failed to meet its burden of proof that Brady "relinquished any expectation of privacy he may have had in the bag." *See United States v. Brady*, No. 87–107, mem. op. at 3 (D.D.C. June 4, 1987). Indeed, the record is clearly to the contrary. Brady's disassociation was absolute: "I don't know whose bag that is. I never saw it before." *Id.; see also supra* note 2. There is no evidence that qualifies in any way Brady's intent to abandon his gym bag. There was no qualification when he disavowed knowledge of the bag; similarly, he remained silent while the agents displayed the bag to other occupants of the car. Case law on abandonment confirms that Brady's spontaneous denial of ownership, unaffected by police provocation, demonstrates sufficient intent of disassociation to prove abandonment. *See United States v. Tolbert*, 692 F.2d 1041, 1045 (6th Cir. 1982); *United States v. Veatch*, 674 F.2d 1217 (9th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *see also United States v. Berd*, 634 F.2d 979 (5th Cir.1981).[8]

### CONCLUSION

In conclusion, we decide that Brady's consent to the initial search of his compartment and luggage provided sufficient basis for the agents' search. We therefore affirm the district court's ruling and sustain the conviction.

---

**8.** This court has previously rejected the suggestion that because a party disclaims property in order to separate herself from incriminating evidence, her privacy expectation in the property continues. *See, e.g., United States v. Brown*, 663 F.2d 229, 232 (D.C.Cir.1981) (en banc); *see also United States v. Williams*, 569 F.2d 823, 826 (5th Cir.1978).