**UNITED STATES of America**

**v.**

**James SILK, Defendant.**

**Crim. No. 88–0227–01–LFO.**

United States District Court,
District of Columbia.

Aug. 12, 1988.

Theodore A. Shmanda, Asst. U.S. Atty., Washington, D.C., for U.S.

Sol Z. Rosen, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

While reviewing the passenger manifest for Amtrak Train No. 82–92 on May 23, 1988, Investigator Calvin Burns of the Amtrak Police learned that a "James Evans" had reserved a one-way ticket with sleeping accommodations from Fort Lauderdale to Baltimore, had paid for the ticket with $295 in cash, and had left a hotel room in Pompano Beach, Florida, as a call back number. Suspecting that "Evans" might be a narcotics courier, Burns called the Pompano Beach hotel, where the clerk informed him that only a Ms. Debbie Wheeler had registered for that room. Burns and Detective David Cassidy of the District of Columbia Police then proceeded to Union Station to interview "Evans" while the train stopped enroute to Baltimore.

Before approaching the defendant, Burns and Cassidy asked the Amtrak conductor if he had seen the individual occupying Compartment No. 5, where Evans had been registered. The conductor responded that he had not seen the individual during the entire trip from Florida, thus further raising the officers' suspicions.

Burns knocked on the door to defendant's compartment and a female voice asked, "Who is it?" According to Burns and Cassidy's testimony, Burns responded, "Amtrak police, may we speak with you?" According to defendant's testimony, they simply asked for tickets and did not identify themselves as police officers until after the door to the compartment had been opened. Because defendant could have asked the officers to leave even after the door had been opened, the point at which the officers identified themselves is immaterial.

In either case, a male voice then responded, "Hold on a minute." Five minutes later, the door to the compartment opened from the inside, and the officers found defendant Silk sitting nude on the bed next to co-defendant Lori Percoco, who was nude from the waist down. Burns asked them for their tickets, and defendant gave him one with the name "James Evans" on it. Defendant could produce no forms of identification when requested to do so by Burns.

While still standing in the doorway of the small roomette, Burns asked if either of them had any drugs. Both replied that they did not. He then asked if he could search their bags. At this point, the officers' version of events departs from the defendant's version. According to the officers, defendant responded in the affirmative, and then defendant Percoco asked to get dressed. Detective Cassidy handed her a pair of jeans sitting on the floor of the compartment. When she asked the officers to close the door, Cassidy refused and instead forced her to exit the room and dress in a nearby compartment. While Percoco was outside the roomette, Silk handed the officers a red bag and a brown bag from the compartment. According to the officers, Silk never conditioned his consent on the existence of a valid search warrant.

According to defendant, Percoco, not defendant, handed the officers the bags after she returned from dressing. Although defendant Silk stated on direct examination that he replied to the officers' request to search the bags by saying, "Yes, if you have a search warrant," he recanted that testimony on cross-examination and admitted that his consent was not explicitly conditional. Rather, he answered affirmatively to the request to search, only later asking, "Do you have a search warrant?" Simply asking if the officers have a warrant is not the equivalent of conditioning consent upon an affirmative response to that question.

A search of the bags in the room uncovered 14 ziplock bags containing a white

powder later identified as cocaine, and the officers arrested the defendants. On June 14, 1988, a grand jury indicted defendants for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a).

Defendant now seeks to suppress the physical evidence seized during this warrantless search and any statements made in conjunction with the search and arrest.[1] Because the defendant voluntarily consented to the search of the bags, that search was lawful.

■ A search conducted pursuant to consent has long been recognized as an exception to the requirements of both a warrant and probable cause. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Even under defendant's scenario, consent to search the bags was freely and voluntarily given. Defendant made no effort to stop Percoco from handing the bags to the officers. Furthermore, he never affirmatively asserted his right to refuse the officers' request to search the bags. At most, if one believes his testimony, defendant simply asked the officers if they had a warrant, rather than demanding that they show him one before they opened the bags. In the face of Percoco's clear willingness to provide the bags to the officers, defendant's behavior did not manifest a desire to deny his consent to the search.

■ Furthermore, none of the factors traditionally associated with involuntary consents—the youth, lack of education or lack of intelligence of the accused, the length of detention, the repeated and prolonged nature of the questioning, or the use of physical punishment—were present in this case. *See id.* at 226, 93 S.Ct. at 2047. Certainly the officers did not lie about the existence of a warrant, as was the case in *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Although the officers did not inform defendant that he had the right not to consent, a failure affirmatively to inform a defendant of the right not to consent is not

coercive *per se. See United States v. Brady,* 842 F.2d 1313, 1315 n.5 (D.C. Cir.1988).

■ A suspect who has been detained for further investigation retains the right to refuse to consent to a search of his property. *See United States v. Sanchez,* 635 F.2d 47, 60–61 (2d Cir.1980). Whether this right has been voluntarily relinquished must be determined based on the "totality of all the circumstances." *Schneckloth, supra,* 412 U.S. at 227, 93 S.Ct. at 2048. The situation in this case was not so inherently coercive that defendant's decision to consent was not freely made. Specifically, the officers' treatment of Percoco—refusing to close the door to the compartment and forcing her to dress elsewhere—was not so coercive as to render the consent involuntary. In *Sanchez,* the defendant was handcuffed and taken by three police officers in a police car, with three police officers following in another car, to his apartment. Five of the officers escorted Sanchez to the apartment. When they reached the door, one of the officers, with Sanchez's keys in his hand, asked for permission to search the apartment. Sanchez replied, " 'Go ahead and look. You won't find anything.' " *Sanchez, supra,* 635 F.2d at 61. In spite of the presence of five police officers, one of whom held the keys to the suspect's apartment, and the fact that the suspect was handcuffed, the Second Circuit remanded the case to the District Court for further findings of fact to determine whether the consent to search the apartment had been given voluntarily, thus implying that consent could be voluntary even in such a coercive atmosphere.

The situation in this case was certainly far less coercive than that found in *Sanchez.* There were only two officers. Although the Amtrak roomette was quite small, that alone does not make the atmosphere of the encounter inherently coercive. *See Brady, supra,* 842 F.2d at 1315 n. 5. There was no testimony that the officers were threatening or abusive. There was no show of force. Convicted on at least two other occasions of drug-relat-

---

1. Because the search was lawful, defendant's argument that the statements made were the fruits of an illegal search and seizure must fail as well.

ed felonies, defendant was familiar with arrest procedures and his legal rights. Even though manifestly aware of the significance of a warrant, he never asserted a right to put on his clothes and leave, or to say that he would not let them search his bags. Considering all the circumstances, his consent to the search was knowing and voluntary.

Accordingly, it is this 12th day of August, 1988, hereby

ORDERED: that defendant Silk's motion to suppress statements and tangible evidence should be, and is hereby, DENIED.