UNITED STATES of America, Plaintiff,

v.

Corey S. COPELAND, Defendant.

Crim. No. 89–0018.

United States District Court,
District of Columbia.

March 16, 1989.

Eva Polin, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Richard Stern, Washington, D.C., for defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

This matter is before the Court upon defendant Corey S. Copeland's Motion to Suppress Tangible Evidence and Statements. At the suppression hearing, Detective Donald Zattau of the Metropolitan Police Department testified on behalf of the Government and defendant Copeland testified in support of his motion. For the reasons stated below, this Court denies defendant's motion to suppress tangible evidence, but grants in part his motion to suppress statements.

### I. Facts

On January 6, 1989, at about 2:20 a.m., Detectives Donald Zattau and Edward Curley of the Metropolitan Police Department were at the Greyhound Bus Station on 1005 First Street, Northeast, when a bus arrived in Washington, D.C. from New York City. The detectives saw two passengers enter the station together, scan the station and walk toward the First Street exit. Detective Curley approached one passenger, David Smith, and spoke with him briefly. Defendant Copeland ignored Smith and left the station. After speaking with Detective Curley, Smith exited through the First Street door.

Detective Zattau walked around the outside of the station and saw defendant Copeland walking back toward the station to rejoin Smith. Detective Zattau approached defendant, identified himself as a police

officer, and asked if he could talk to defendant. Defendant answered, "Yes." Detective Zattau asked defendant if he had just gotten off a bus and defendant said he had not. When asked where he lived, defendant stated that he lived in Fort Meade, Maryland. Detective Zattau asked defendant if he had any identification and defendant said he did not. Detective Zattau then explained that he was there as part of a drug interdiction unit because of all the drugs coming from New York to Washington, D.C. Defendant stated that he was aware of the drug problems. When asked if he carried any drugs, defendant responded that he did not. Detective Zattau asked if defendant objected to a search and defendant said he did not and raised his hands. During the pat down, Detective Zattau felt a hard object in the front of defendant's pants. When asked what the object was, defendant began to undo his belt. Detective Zattau requested permission from defendant to retrieve the object himself. Detective Zattau discovered two plastic bags containing a white rock-like substance which field-tested positive as "crack" and had an estimated street value of $7,000.[1]

Defendant was arrested and advised of his *Miranda*[2] rights. He indicated that he did not wish to answer any questions. After advisement of his rights, however, defendant was asked what he was going to do with the drugs and he stated that "he was to meet someone and get $400.00 for bringing the drugs into Washington."

## II. *Discussion*

### A. Suppression of Tangible Evidence

Defendant Copeland seeks suppression of the evidence seized from his person, claiming that it was obtained as a result of an unlawful search. He argues that Detective Zattau had neither probable cause to arrest him nor any articulable suspicion to stop him.

■ Defendant claims he was under arrest and detention as soon as the detectives approached. The evidence, however, is to the contrary. "Only when the officer, by means of *physical force* or show of authority, has in some way restrained the liberty of a citizen, may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (emphasis added). As the Court in *Terry* recognized, not all encounters between policeman and citizens involve "seizures" of persons. *Id.* To determine whether an encounter is a "seizure" or a mere "contact," the Court must ask whether a reasonable person would have thought he or she was free to leave the officer's presence. *See Gomez v. Turner*, 672 F.2d 134, 141 (D.C.Cir.1982). *See also United States v. Brady*, 842 F.2d 1313, 1314–15 (D.C.Cir.1988).

■ Defendant faced none of the factors typically found to amount to intimidation or coercion. The detectives were in plain clothes, did not display any weapons, did not threaten defendant and did not physically intimidate him. The encounter occurred on a sidewalk of a public street where defendant was free to walk away.

Furthermore, Detective Zattau received consent to search defendant. The detective asked if he objected to a search and defendant said he did not *and* raised his hands to facilitate the search. Although defendant claims that "consent" to search was not freely and voluntarily given, the Court concludes otherwise. The totality of the circumstances surrounding the search supports the Government's allegation that consent was freely given. There is no evidence of aggressive questioning, intimidating actions, or prolonged police presence. *See Brady*, 842 F.2d at 1315. Not only did defendant consent to the search, he also allowed Detective Zattau to retrieve the

---

**1.** At the evidentiary hearing held on March 1, 1989, defendant Copeland testified that the events unfolded contrary to the account given by Detective Zattau. Copeland testified that Detective Zattau grabbed him from behind and exerted some force to turn him around. After explaining the District's drug problem to him, Detective Zattau asked Copeland if he could search him. Copeland testified that twice he stated, "For What?" at which point Detective Zattau searched him and uncovered the crack.

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

object found in his pants. The detective sought permission after defendant began to undo his belt on his own volition in order to retrieve the drugs.

■ Although the Court concludes that no fourth amendment detention occurred, it also finds that the Government has shown that Detective Zattau possessed an articulable suspicion to believe that defendant was engaged in criminal activity at the time that he asked to search defendant. Defendant had just arrived on a bus from a source city (New York) in the early morning hours; he scanned the bus station carefully before leaving it; he appeared to ignore Smith when entering the station but sought to rejoin him outside the station, and he denied that he had arrived on a bus from New York.

The Court concludes that the drugs seized from defendant were not recovered as a result of an unlawful search and denies defendant's motion to suppress.

### B. Suppression of Statements

■ Defendant also seeks suppression of any statements made by defendant, claiming that all statements were obtained as a result of an illegal arrest and detention. As shown above, there was no illegal detention or arrest. The Court is concerned, however, about defendant's post-arrest statement. The Government has represented to the Court that it will not use defendant's statement in its case in chief. The Government seeks to reserve its right to use the statement in cross-examination, if the defendant takes the stand.

In *Harris v. New York*, the Supreme Court allowed the prosecution to use an inadmissible statement to impeach defendant's trial testimony. 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971). The prosecution had conceded that the statements were inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There was no evidence, though, that the statements made to the police were coerced or involuntary. The Court concluded that the statements could be used for impeachment purposes, "provided of course that the trustworthi-

ness of the evidence satisfies legal standards." *Harris*, 401 U.S. at 224, 91 S.Ct. at 645. The Court believed that the deterrent effect of the exclusionary rule was still served "when the evidence in question is made unavailable to the prosecution in its case in chief." *Id.* at 225, 91 S.Ct. at 645. The Court concluded that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id.* at 226, 91 S.Ct. at 646.

The Court suppresses defendant's post-arrest statement as to its use in the Government's case in chief, but reserves its judgment as to using it for impeachment purposes.