**UNITED STATES of America**

v.

**Roland FIELDS.**

**Crim. No. 89–0371–JGP.**

United States District Court, District of Columbia.

March 23, 1990.

9. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

## MEMORANDUM

Defendant is charged in a one count indictment filed on October 5, 1989, with unlawful possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), (b)(1)(C). The case is now before the Court on the defendant's motion for reconsideration of the Court's denial of his motion to suppress evidence. After giving careful consideration to the motion and the opposition thereto, together with the record in this case, the Court concludes that the motion for reconsideration should be granted, and that the motion to suppress should be granted.[1]

## I

Briefly, the underlying facts are as follows: On or about September 8, 1989, the defendant was on a bus which originated in Connecticut or New York City and which was enroute through Washington, D.C., to the southeastern United States. The defendant boarded the bus in Connecticut or New York, was travelling alone and, was travelling to a destination in North Carolina. The bus arrived at the Greyhound—Trailways Bus Station in the District of Columbia at approximately 8:30 p.m. At the station at that time were Sergeant John Brennan, Detective Vance Beard and Detective Edward Curley. The officers were assigned to the Morals Division Interdiction Unit with the Metropolitan Police Department. Their duty was to intercept the flow of narcotics traffickers from known source cities, either travelling to Washington or through Washington via public transportation. TR at 3.[2] The officers observed defendant exit the bus and then Curley, Brennan and Beard boarded the bus. The bus was carrying only four passengers, one being the defendant. Beard was interviewing another individual when the defendant returned to the bus carrying a chili dog, and took his seat approximately two or three seats from where Curley was standing adjacent to the aisle of the bus. TR at 5–6. The defendant was seated about three-quarters of the way down on the driver's side of the bus. At this time Beard was all the way in the back of the bus and Brennan was standing near the front of the bus. Curley had been maintaining a backup position while Beard was interviewing another individual. All of the officers involved were in plain clothes, did not have their weapons displayed, and all spoke in conversational tones.

After the defendant returned to his seat, Curley approached him, displayed his photo identification and asked whether he could speak with him. At this time the defendant was seated alone while eating his chili dog. After the defendant "consented" to speak with Curley, Curley asked if he had his ticket. The defendant answered affirmatively and immediately pulled out a Connecticut driver's license and handed it to Curley. TR–8. The driver's license was in the name of Roland Fields with an address

---

1. After the Court denied his motion to suppress evidence, the defendant entered a plea of guilty to the charge.

2. "TR" refers to the transcript of the hearing held on November 14, 1989.

in Stanford, Connecticut. The officer never asked for the defendant's identification. Curley then asked the defendant if the suitcase that was in the overhead rack directly above him belonged to him. The defendant indicated that the bag was not his after which Curley inquired whether he was travelling with any luggage. The defendant answered that he did not have luggage. Curley then asked the other passengers on the bus whether they owned the bag that was on the overhead rack and all three of them stated that they did not. At that time only one bag was located in the area of the defendant, that bag being the bag on the overhead rack. Curley then took the bag down, placed it on the seat directly in front of the defendant, opened the bag and began to search the bag. Inside Curley recovered several plastic bags containing white powder. The powder later tested positive for heroin. Curley also found "several thousand glassine envelopes, a screen, a spoon, and a rubber identifier stamp." TR at 11–12. He also found two prescription bottles in the bag that were in the name of Roland Fields. The only other item he found in the bag was a bus ticket showing travel from Stanford, Connecticut. Once Curley found the illegal drugs and items apparently belonging to Fields, he placed the defendant under arrest. TR at 12.

Curley explained that neither Beard nor Brennan had made any effort to detain the defendant up to the point the drugs were found in the bag. Brennan spoke with the defendant and asked whether he had any identification. Brennan was given the same driver's license that the defendant had handed to Curley. Brennan then handed it back and moved a few feet away, this being his only contact with the defendant up to that point. This contact was made by Brennan at the time Curley was still searching the bag. The officer testified that prior to finding the items in the suitcase, the defendant had not indicated that he wanted to leave the bus but instead he merely continued to eat his chili dog. The officer testified that if the defendant had indicated that he wanted to leave the bus he would have been free to leave. Curley

also testified that he did not tell the defendant that he was required to answer the officer's questions, did not touch him in any manner, did not tell him why he wanted to talk with him and did not indicate that he was not required to answer any questions or that he was free to leave.

The record reflects that the officers did not have any information on Mr. Fields prior to the time Detective Curley approached him, and that there was nothing suspicious about the activity or the dress of Mr. Fields prior to the time the officer approached him. In other words, this is a case in which it is conceded by the government that the officers lacked probable cause or even a reasonable suspicion to detain or arrest the defendant at the time they approached him. At no time during his conversation with the defendant, prior to finding the drugs, did the officer refer to drugs. The officer testified that he had no reason to stop Mr. Fields until such time as he found the prescription drugs with his name on the label indicating that the bag in question belonged to the defendant.

## II

This Court originally heard the motion to suppress evidence on November 14, 1989 and thereafter orally ruled that the motion to suppress should be denied. In denying the motion, the Court observed:

Now, I know that Sergeant Brennan was perhaps at the door—but there is no evidence that Mr. Fields knew that or that he suspected that he was not able to leave. Mr. Fields has offered no evidence on that point, he has not testified that he was in any way coerced or intimidated by the presence of the officers.... the officer has testified that the conversation was in a normal tone of voice, that there was no coercion, that his weapon was not displayed, that all he did was to identify himself.

TR at 44. Moreover, notwithstanding the government's argument that the defendant had abandoned the bag found on the overhead rack, the Court observed that it was not clear that the bag had been abandoned and ruled that the defendant had standing

to move to suppress the evidence. TR at 45–46.

The defendant moved for reconsideration of the prior ruling on the motion to suppress based two recent decisions by judges of this court. *See United States v. Cothran,* 729 F.Supp. 153 (D.D.C.1990) (Judge Gesell) and *United States v. Lewis,* 728 F.Supp. 784 (D.D.C.1990) (Judge Sporkin). *See also United States v. Felder,* 732 F.Supp. 204 (D.D.C.1990) (Judge Sporkin). All three cases involved "encounters" at the Greyhound–Trailways Bus Station.

The Court has carefully reviewed the transcript of the hearing on the motion to suppress, together with the above decisions. After giving consideration to the reasons stated for the rulings in the above cases, the Court is persuaded that the evidence in this case should have been suppressed; therefore, the motion for reconsideration is granted as is the motion to suppress evidence.

█ Normally a brief encounter by a police officer where there is no show or threat of force and where the citizen is free to walk away does not violate the Fourth Amendment. *See United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). "The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (citation omitted). *See also United States v. Savage,* 889 F.2d 1113, 1116 (D.C.Cir.1989).

█ Here, after reviewing all of the circumstances surrounding the encounter, the Court concludes that a reasonable man would not have believed that he was free to leave. The defendant was merely passing through the District of Columbia and had no intention of stopping over in this city. He had briefly stepped off the bus to purchase something to eat and he then returned to his seat. Under these circumstances, once approached by the officers, there was no place for the defendant to go

but to remain on the bus. The circumstances are much different from the 'encounter' which takes place within a bus station, *see United States v. Winston,* 892 F.2d 112 (D.C.Cir.1989), or a train station, *see United States v. Maragh,* 894 F.2d 415 (D.C.Cir.1990), where the citizen can walk away. The defendant here had no place to go except to step off the bus, assuming he felt free to do so, thereby running the risk that the bus might leave without him. Moreover, the situation is different than an "encounter" on a train where a citizen has the option of walking into another car without actually leaving the train. *See United States v. Savage,* 889 F.2d 1113 (D.C.Cir. 1989); *United States v. Baskin,* 886 F.2d 383 (D.C.Cir.1989); *United States v. Brady,* 842 F.2d 1313 (D.C.Cir.1988).

Additionally, the defendant was effectively blocked from standing up, since he was seated while the officer was asking for his "consent", he was seated three-quarters of the way toward the back of the bus, he was one of only four passengers on the bus, and he was surrounded by the three police officers; one standing by his seat, one standing behind him, and one standing between him and the door. While it may be argued that the officers were in plainclothes and did not display their weapons, the officer speaking to him identified himself and there is evidence that Sergeant Brennan also took part in the conversation at some point. It would be straining credulity to believe that a reasonable person would not believe that a police officer is not armed. Under these circumstances the Court concludes that a reasonable man would not have felt free to ignore the officers or to refuse to consent to their request to speak with him and then to search his bag.

█ Although the defendant denied that the bag was his, the Court cannot accept the government's argument that the defendant abandoned the bag. *See United States v. Brady, supra,* at 1315–16. The officer asked the defendant whether the bag on the overhead rack was his and the defendant responded in the negative. TR. at 10. The officer then asked the other three passengers whether it was their bag

**8**

and they also disclaimed ownership. TR. at 11. Under the facts of this case, unlike those in *Brady*, the record supports a finding that the defendant did not abandon the bag. In *Brady*, the evidence supported a finding that Brady voluntarily consented to speak with the officers, whereas here, the Court finds that a reasonable man would not have felt free to leave the bus or to refuse to answer the questions propounded by the officers. Likewise, a reasonable man would not have felt free to deny the officer's request that he search the bag; thus, the choice is presented; acknowledge ownership of the bag and deny consent for a search, or deny ownership of the bag. The defendant selected the latter course, but at that time, his actions were dictated by the actions of the police officers.

This Court recognizes the difficult task involved in ferreting out and locating drugs and those who engage in the dangerous trade of distributing illicit drugs. But, as the Supreme Court has cautioned: "However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness." *Miller v. United States*, 357 U.S. 301, 313, 78 S.Ct. 1190, 1197–98, 2 L.Ed.2d 1332 (1958).

The Court concludes that the motion to suppress should be granted. An appropriate order has been filed.