UNITED STATES of America, Plaintiff,

v.

Josephine Cherry MARK, a.k.a. Cherry Josephine Mark, Defendant.

Crim. No. 90–0174.

United States District Court, District of Columbia.

July 23, 1990.

Kevin Flynn, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Winston J. Yallery–Arthur, Washington, D.C., for defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

This matter is before the Court on Defendant Josephine Cherry Mark's Motion to Suppress Evidence and Statements. The sole witness at the suppression hearing was Detective Vance Beard, of the Metropolitan Police Department, who testified on behalf of the government. For the reasons stated below, the Court grants defendant Alston's motion to suppress evidence and statements.

### Facts

In the early afternoon of March 15, 1990, Detective Vance Beard was on duty with fellow detectives Carl Stump and J.J. Brennan at the Greyhound/Trailways bus terminal located at 1005 1st Street, N.E., Washington, D.C., when a bus arrived from New York. The officers, who were dressed in plain clothes, observed one of the male passengers leave the bus and go directly to a pay phone inside the station. The man remained on the phone for some time before returning to the bus. Detective Carl Stump stopped the man just as he was about to reboard and asked him if he would mind answering some questions. The man apparently agreed to the interview. During their conversation, the man told Detective Stump that he had been in New York for four days, that he was traveling without luggage, and that the defendant, Ms. Mark, was holding his ticket.

Detectives Beard and Stump accompanied the man back onto the bus to retrieve his ticket. At the suppression hearing, Detective Beard testified that he remained at the front of the bus while Detective Stump took the man to where the defendant was seated and asked the defendant for his ticket. Detective Beard testified that he did not know whether or not Detective Stump identified himself to the defendant as a Metropolitan Police Officer, but he did not see Stump display an identification folder to the defendant. The ticket which Ms. Mark gave to Detective Stump was for travel from New York to Rocky Mountain, [sic] North Carolina. The officers then accompanied the male passenger off the bus again and, with his consent, conducted a body search. The search revealed no illegal substances on the person of the male passenger.

Detective Beard returned to the bus, identified himself to the defendant, and asked Ms. Mark if she would answer some questions. When the defendant agreed, the detective asked what her destination was. She replied that she was traveling to Rocky Mountain, [sic] North Carolina and admitted that she was traveling with the male passenger whose ticket she carried. Detective Beard then explained the purpose of the interview was to look for illegal narcotics. He asked the defendant if she was traveling with any luggage. She said that she had no checked luggage but did have a bag in the overhead compartment. Detective Beard asked if he could search it. The defendant agreed to the search. She retrieved the bag from the compartment over her head, placed it on the seat next to her, and began removing items from it. The first item she removed was an open box of Kotex sanitary napkins which she placed on the seat. Detective Beard asked the defendant again if *he* could search the bag. When Ms. Mark agreed a second time, he reached over her and took the box of Kotex. Searching inside the box, the detective felt some rock-like substances which turned out to be cocaine hidden inside the napkins. The defendant was placed under arrest. After her arrest, the defendant exclaimed that she did not know how the rocks of cocaine got inside the box of sanitary napkins.

### DISCUSSION

 The Court is releasing concurrently its decision on the defendant's motion to suppress with its order and memorandum suppressing evidence and statements in the case of *United States v. Brenda Alston*, 742 F.Supp. 13 (D.D.C.1990). As the above exposition of the facts reveals, the two cases are remarkably similar. Both Ms.

Mark and Ms. Alston allegedly consented to be interviewed and to have their belongings searched by law enforcement officers who confronted each defendant in her seat on a Greyhound bus. Both incidents occurred during short stopovers in the District of Columbia, a location which neither defendant intended as her final destination point. And the evidence reveals that both defendants were approached after other bus passengers had been interviewed and searched by the same entourage of officers.

The only meaningful difference between the two cases is the fact that the passenger interviewed and searched prior to Ms. Mark, was her traveling companion, and not some individual unknown to her. But this fact merely makes the case for suppression of the evidence against Ms. Mark stronger.[1] It is reasonable to assume that a passenger confronted by a police officer who does not bother to display his identification folder but asks for a travelling companion's ticket would feel a necessity to comply with the officer's requests. It is further reasonable to surmise that the same passenger would feel compelled to cooperate when the officers detaining her traveling companion requested an interview with her or ask to search her belongings. Moreover, such a passenger is unlikely to feel free to depart from the bus and leave the officers' presence, abandoning her companion and stranding him without a ticket.

Because the Court finds no material differences in the factual circumstances of defendant Mark's arrest from those of defendant Alston's arrest, it hereby adopts the conclusions of law set forth in its Order and Memorandum (dated July 23, 1990) in the case of *United States v. Alston, Id.* Thus, the Court finds that the defendant, Ms. Mark, was seized in violation of her fourth amendment rights, by the law enforcement officers who interviewed her

aboard the Greyhound bus. The Court further concludes that the defendant gave involuntarily to law enforcement officers her consent to search her luggage. Therefore, all evidence and statements produced by the illegal seizure of Ms. Mark and the illegal search of her belongings must be suppressed.

[1] The government does not suggest and the evidence does not reveal that the detectives had established probable cause to arrest or even a reasonable suspicion of illicit activity to justify detention of either the defendant or the man traveling with her. The interview of the defendant's traveling companion appears to have been justified only on the basis of consent. The fact that the search of his person revealed no illegal narcotics tends to negate any suspicions that the defendant might be carrying narcotics.