UNITED STATES of America

v.

Kasim CHANDLER.

No. 90–0261.

United States District Court,
District of Columbia.

July 31, 1990.

---

Gary Wheeler, Esq. Asst. U.S. Atty., Washington, D.C., for Government.

Jensen Barber, Washington, D.C., for defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

This case is before the Court on defendant's Motion to Suppress Physical Evidence. At the suppression hearing held on July 30, 1990, Detective Vance Beard of the Metropolitan Police Department testified on behalf of the government. Mr. Raheem Tucker and the defendant testified on behalf of the defense. For the reasons stated below, the Court grants defendant's motion to suppress.

### I. FACTS

This case involves yet another confrontation between members of the Metropolitan Police Department's Narcotics Interdiction Unit and a member of the public traveling on an interstate bus. At about 6:30 p.m. on the evening of May 15, 1990, detectives from the Interdiction Unit observed the arrival of a Greyhound bus at the terminal located at 1005 First Street, N.E., Washington, D.C.

Defendant Chandler, who along with several companions was enroute from Newark, New Jersey to Florence, South Carolina, disembarked and walked across the station to get something to eat at Hardee's. As the four young men returned to the bus, they were stopped by Detectives Beard, Huffman, Hairston and Oxendine. Detective Beard testified that the officers had determined to stop and interview these passengers before they re-boarded the bus. Detective Beard offered no explanation for why these young men were selected for interviewing. Certainly, he had nothing approaching probable cause, nor even a reasonable, articulable suspicion that these individuals were involved in drug trafficking.

It appears that preliminary conversations occurred outside the bus. However, at least four officers boarded the bus with the defendant and his companions in order to continue the interviews. These interviews and searches were conducted in the cramped aisles of the bus. Detective Beard testified that the aisle in a Greyhound bus is only 14½ to 15 inches wide. Two officers remained near the front of the bus, blocking the exit aisle. Detective Beard was in the rear of the bus, a seat or two behind where the defendant was sitting. Detective Huffman was parallel to defendant's seat, and was also standing in the aisle.

The defendant and one of his companions, Mr. Raheem Tucker, testified that they consented to the officers' requests to search their bags. Detective Beard, who had been interviewing another companion at the time, testified that the defendant volunteered to Detective Huffman that he could search his bag, without being asked first. At best, the Court finds it improbable that the defendant would turn to the detective without prompting and volunteer to have his possessions searched. Even if the defendant "volunteered," the Court finds that the crowded and intimidating atmosphere on the bus created an environment in which the defendant felt compelled to accede to what the officers wanted.

The officers found no narcotics and exited the bus. The defendant testified that his bus ticket, which had been retained by the officer, was returned to him. Both the defendant and Mr. Tucker testified that the bus driver closed the bus door and started the engine, leaving them with no doubt that the bus was about to depart, as sched-

uled, after its short stop. At this point Detectives Oxendine and Beard re-boarded and walked back to the defendant.

Detective Beard testified that the officers re-boarded because they had determined that several pieces of luggage without identification tags, which were located in the rack near the defendant's seat, had not been searched. Detective Oxendine stood in the seat immediately in front of the defendant, with only her foot in the aisle. Detective Beard stood two seats ahead, by his own admission with half of his body partially blocking the narrow aisle. Another detective stood near the front of the bus, but, according to Beard, did not block the aisle. Detective Beard testified that the defendant admitted that three bags in the overhead rack were his, and consented to their search. Two of the bags contained narcotics. The defendant testified that he admitted ownership of only two blue bags, one of which was searched the first time, and one of which was searched the second time the detectives came through the bus.[1] Neither of those bags contained narcotics. He testified that Detective Oxendine told him to hand her the other bags from the rack to be searched, and he did. Whether he consented to their search or handed them to the officer without saying anything is not important in light of the Court's finding that the circumstances of this encounter were so coercive as to render any "consent" invalid.

## II. DISCUSSION

■ It has become commonplace for the Court to hear of confrontations involving the Narcotics Interdiction Unit and individuals passing through this city's bus terminal. The officers in this case testified that they inspected every piece of luggage in the racks above the passengers' heads, looking for bags without identifying tags. These were the bags the officers ultimately determined to search. The Court emphasizes the fact that many of the individuals stopped by the Interdiction Unit, like the defendant and his companions, are traveling on an interstate bus *through* Washington, D.C. They have no intention of stopping in Washington, D.C., or presumably, of distributing illegal narcotics on the streets of Washington, D.C. Yet, it has become routine to subject interstate travelers to warrantless searches and intimidating interviews while sitting aboard a bus stopped for a short layover in the Capital. These searches, ostensibly made with the interviewee's consent, are inconvenient, intrusive and intimidating. In this case, and in many others, the warrantless search and seizure of these citizens violates the fourth amendment to the constitution.

The fourth amendment protects "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures...." Whether or not an individual is seized so as to implicate the protections of the fourth amendment depends upon the totality of the circumstances. *United States v. Baskin*, 886 F.2d 383, 386 (D.C.Cir.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990). If, in view of all the circumstances, a reasonable person would not feel free to leave, then a "seizure" has taken place. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). The Court finds that the police conduct in this case was " 'so intimidating' that [an individual] could reasonably have believed that he was not free to disregard the police presence and go about his business." *See Michigan v. Chesternut*, 486 U.S. 567, 576, 108 S.Ct. 1975, 1981, 100 L.Ed.2d 565 (1988); *United States v. Cothran*, 729 F.Supp. 153, 155 (D.D.C.1990).

Although the officers used conversational tones and did not outwardly display their weapons, the Court finds additional circum-

---

1. On cross examination, the defendant denied owning the bags in which the narcotics were found. For the purposes of standing to challenge this search, it is irrelevant whether defendant is actually the owner of the two additional bags or not. The Court recalls that on direct examination the defendant distinguished between the two blue bags, which he agreed could be searched, and the two other bags, which he said nothing about to the officers. Detective Beard testified that the defendant consented to a search of all these bags.

**336**

stances support its conclusion that the interview and search of the defendant was conducted in an atmosphere so coercive that the protections of the fourth amendment were implicated. The District of Columbia was not the defendant's destination, yet to avoid the officers' questioning he would have had to exit the bus and risk missing its departure. This factor is especially compelling because the evidence shows that the bus was in fact ready to depart when the officers boarded the second time. The cramped nature of the bus and the narrow width of the aisle limited the defendant's mobility, especially in light of Detective Beard's testimony that he at least partially blocked the 15 inch aisle at all times. No fewer than three and as many as five officers were on the bus while the interviews were conducted. The officers requested the defendant's bus ticket, and held the ticket throughout the initial encounter. A number of recent opinions by Judges of this Court have relied on these factors in concluding that evidence obtained in similar warrantless searches aboard interstate busses must be suppressed. *See United States v. Alston,* 742 F.Supp. 13 (D.D.C.1990) (this Court's opinion); *United States v. Mark,* 742 F.Supp. 17 (D.D.C.1990) (this Court's opinion); *United States v. Fields,* 733 F.Supp. 4 (D.D.C.1990) (Penn, J.); *United States v. Felder,* 732 F.Supp. 204 (D.D.C.1990) (Sporkin, J.); *United States v. Cothran,* 729 F.Supp. 153 (D.D.C.1990) (Gesell, J.); *United States v. Lewis,* 728 F.Supp. 784 (D.D.C. 1990) (Sporkin, J.).

■ This warrantless search and seizure of the defendant arguably fits only one of the narrow exceptions to the warrant requirement, that of consent. However, the Court finds that the defendant's alleged consent to the search of the two bags from the overhead rack was not "an intervening independent act of free will" sufficient to "purge the primary taint of the unlawful invasion." *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); *see also Alston,* at 16–17 (consent followed immediately on the heels of the illegal seizure and was not voluntary).

### III.  CONCLUSION

The Court finds that the defendant was seized in violation of the fourth amendment when he was twice approached by police officers on an interstate bus enroute to a destination several hours south of Washington, D.C. The defendant's purported consent to a search of his bag was a product of this illegal seizure. Moreover, the intimidating circumstances surrounding his seizure render defendant's consent involuntary. Absent the defendant's voluntary consent, the warrantless search of his bags is unconstitutional. Therefore, for the reasons stated above, the Court grants the defendant's motion to suppress physical evidence.