**UNITED STATES of America**

v.

**Nathaniel RANDOLPH, Defendant.**

**Crim. No. 91–366.**

United States District Court,
District of Columbia.

Feb. 10, 1992.

12. All discovery disputes will be referred to a Magistrate Judge.

**408**

Reita Pendry, Leigh Kenny, Asst. Federal Public Defenders, Washington, D.C., for Nathaniel Randolph.

Karen Rhew, Asst. U.S. Atty., Washington, D.C., for U.S.

## ORDER

REVERCOMB, District Judge.

Upon motion in this case by defendant to suppress evidence related to his arrest on May 29, 1991, the Court considered testimony and arguments offered by the parties at a hearing on January 31, 1992. Based on this hearing, the Court granted from the bench the defendant's suppression motion, noting then that its written findings and conclusions would follow. The Court's reasons for suppressing the evidence and, upon defendant's motion, for dismissing this case, are set forth below.

*Facts*

Detective Ronnie Hairston of the Washington, D.C., Metropolitan Police Department appeared as the sole witness at the January 31 hearing. Detective Hairston testified that on the evening of May 29, 1991, he was working at his usual assignment as a drug interdiction officer at the Greyhound Bus Station in Washington. Detective Hairston is a 21–year veteran of the Metropolitan Police and has worked regularly at drug interdiction at the bus station since October 1989.

Detective Hairston testified that, during his watch, he observed the defendant, who is a 22–year–old North Carolina resident, depart a bus that had arrived from New York City and board one bound for New Orleans. After other passengers had boarded, the detective and another officer, who were dressed in plain clothes, came aboard intending to "work[ ] the bus[ ]" in the now-common fashion considered by the Supreme Court in *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *i.e.,* approach individuals at random to ask them questions and request their consent to search for illegal drugs. Detective Hairston testified that he observed the defendant occupying a seat in the bus's last row and, as is normal procedure in these interdiction efforts, he approached the defendant, did not display a badge or a gun, addressed him in a conversational tone, and explained that his purpose for boarding the bus was drug interdiction. Detective Hairston testified that he asked the defendant if he understood this purpose; the defendant acknowledged that he did understand. The defendant was the first passenger Detective Hairston spoke to on the bus because, the detective said, his plan was to work from the rear of the bus forward as his partner talked with passengers in the front.

Detective Hairston asked the defendant for his ticket, which the defendant produced, and then asked him if a bag above the defendant in the overhead rack and a jacket on the seat next to him belonged to the defendant. The defendant acknowledged his ownership of these items. The detective then testified, quite forthrightly, and confirmed when asked for clarification, that he next asked the defendant, who was seated, "May I search your bag, your jacket, and your person?", using those words or words to that direct effect, to which defendant replied "Yes." That Detective Hairston made this request, in one sentence and in tandem, for defendant's blanket consent to search his bag, jacket and body is further confirmed by Detective Hairston's own police report on the encounter, which the defendant quotes in his pleadings without contradiction from the government:

> Det Hairston then asked the def. for permission to search his black tote bag, jacket, and person. The def. gave Det Hairston permission to search the tote

bag, jacket, and his person by saying yes.

Randolph Supplemental Memorandum at 2. Detective Hairston then proceeded to search the bag and jacket and, finding no drugs, went on to search the defendant as he remained seated, beginning with his ankles and legs, moving to his chest, and then patting down his groin area, where the detective testified he felt something hard. As the detective commenced the body search and before he reached the groin, he testified, the defendant asked him if didn't need a search warrant to search his person. To this question, Detective Hairston testified that he replied to the defendant that he did not need a warrant so long as the defendant had given his verbal consent to the search. The detective testified that the defendant said nothing thereafter but appeared nervous when the detective felt the hard object, upon which Detective Hairston asked the defendant to open the front of his trousers. The defendant complied, and Detective Hairston observed that defendant was wearing a jock strap over his underwear. The detective opened the jock strap and saw plastic bags containing a rock-like substance, which later testing confirmed was crack cocaine. Detective Hairston then arrested the defendant. The detective testified that, at no time during his encounter with the defendant did he obstruct the defendant's egress from the bus.

*Discussion*

■■■■ In its decision last summer in *Bostick, supra,* the Supreme Court reaffirmed that, even when police have *no* basis for suspecting an individual, they may (1) generally ask questions of him, (2) ask to examine his identification, and (3) request to search his luggage, "so long as the police do not convey a message that compliance with their request is required." [1] 111 S.Ct. at 2386. *Bostick* reit-

erated that the Fourth Amendment inquiry to be applied to persons confronted with such questions on public carriers remains the same as that to be applied to a person walking on the street; *i.e.,*

> whether a reasonable person [2] would have felt free to decline the officers' requests or otherwise terminate the encounter.... taking into account all of the circumstances surrounding the encounter.... Where the encounter takes place is one factor, but not the only one."

*Id.* at 2387; *see also United States v. Lloyd,* 868 F.2d 447, 451 (D.C.Cir.1989) (to determine whether consent is voluntary, a court must apply a "totality of all the surrounding circumstances" test). Other relevant circumstances have been held to include

> the time of day, ... the officer's tone of voice, and whether the officer displayed a weapon or handcuffs, wore a uniform, touched the individual without permission, threatened or physically intimidated him, or retained his identification or travel ticket.

*United States v. Lewis,* 921 F.2d 1294, 1297 (D.C.Cir.1990). Yet another circumstance to be considered, and one found "particularly worth noting" by the *Bostick* Court, *id.* 111 S.Ct. at 2385, is whether the officer requesting the search informed the passenger of his right to refuse. *Lloyd, supra,* 868 F.2d at 451. There appears to be no *obligation* to so inform the passenger, and the prosecution need not prove that a defendant knew of his right to refuse. *See Id.; Schneckloth v. Bustamonte,* 412 U.S. 218, 226–27, 249, 93 S.Ct. 2041, 2047–48, 2059, 36 L.Ed.2d 854 (1973).

The facts of the instant case go well beyond those of *Bostick,* in which the Supreme Court restricted itself to merely rejecting a *"per se* rule" that the practice of "working the buses" is unconstitutional, and reserved decision on whether the facts at issue there ("Two officers walked up to

---

**1.** Genuine consent to a warrantless search constitutes a waiver of 4th Amendment protections including suppression of contraband uncovered in the search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973).

**2.** The Court made clear that the " 'reasonable person' test presupposes an *innocent* person"; *i.e.,* whether a person carrying no contraband would feel free to avoid the search. *Id.* 111 S.Ct. at 2388 (emphasis in original).

Bostick on the bus, asked him a few questions, and asked if they could search his bags") constituted an unlawful seizure. *Id.* 111 S.Ct. at 2385, 2388. Here, the police sought the defendant's permission to search his belongings *and* his person. Such a request and consent search on a public bus is permissible under the law of this Circuit. *See Lewis, supra*, 921 F.2d at 1296.

However, once consent is given and a voluntary search is commenced, it appears that this consent may be withdrawn or limited at any time prior to the completion of the search. 3 Wayne R. LaFave, *Search and Seizure* Section 8.1(c), pp. 172–72 (2d ed. 1987); *see, United States v. Brady*, 842 F.2d 1313, 1315 & n. 6 (D.C.Cir. 1988); *United States v. Joseph*, 892 F.2d 118, 122, 126–27 (D.C.Cir.1989). A determination of whether consent was withdrawn or limited in this case by virtue of defendant's question to Detective Hairston, "Don't you need a search warrant to search my person," must be made in view of a "totality of all the surrounding circumstances," just as must a determination of whether, by stating "yes" to the detective's broad-ranging request, the defendant ever really consented to a search of his groin on a public bus at all.

The Court finds a number of circumstances in this case to be problematical. First, Detective Hairston did not advise the defendant of his right to refuse to consent to a search. Second, as indicated, the complex nature of Detective Hairston's broad-ranging request for permission to search, juxtaposed against defendant's simple affirmative response, raises a question whether the two had a meeting of the minds that the search would include the defendant's private parts. *See United States v. Blake*, 888 F.2d 795 (11th Cir. 1989) (holding that a reasonable person would not understand that giving consent to a police request to search his or her "person" in an airport terminal would entail an officer touching his or her genitals). Third, also as already indicated, the defendant's inquiry to the detective as the body search commenced about the need for a search warrant deepens the Court's suspicion that no unqualified consent occurred. Fourth, Detective Hairston's response to the search warrant inquiry that no warrant was needed once consent had been given could, in the Court's opinion, lead a reasonable, innocent-minded person to believe that he had already foregone any right to withdraw or limit consent; the fact that the defendant said nothing further to the officer therefore is not significant. Finally, notwithstanding Detective Hairston's assertion that he never blocked the defendant's egress from the bus, he testified quite clearly that he searched the defendant's legs, chest and groin while the defendant was sitting in a cramped bus seat; the Court's view is that a reasonable, innocent-minded person would not feel free to terminate such an encounter.

The Court finds that the above circumstances, considered together, go beyond the Supreme Court's admonition in *Bostick* that police conducting random searches on public carriers "not convey a message that compliance with their request is required." 111 S.Ct. at 2386. Accordingly, the Court must grant defendant's motion to suppress the evidence seized from the defendant.

SO ORDERED.